## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| BIANCA BEST, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
|     v. | ) Case No.  25-cv-13514-RMG-MGB |
| | ) |
| SAM RICHARDSON, Sheriff of Dorchester | ) |
| County, in his individual and official capacity, | ) AMENDED COMPLAINT WITH |
| CLAYTON KILLION and MARC | ) JURY DEMAND |
| MOOD, Deputies with the Dorchester | ) |
| County Sheriff's Office, in their | ) |
| individual and official capacities, | ) |
| DORCHESTER COUNTY SHERIFF'S | ) |
| OFFICE, COUNTY OF DORCHESTER | ) |

Plaintiff Bianca Best, by and through undersigned counsel, files this Amended Complaint against Defendants Sam Richardson, Clayton Killion, and Marc Mood, in their individual capacities, pursuant to the Court's March 9, 2026 Order adopting the Report and Recommendation, dismissing certain claims and parties, permitting Plaintiff's surviving individual-capacity and common-law claims to proceed, and granting Plaintiff leave to amend as to claims against Defendant Richardson for supervisory liability and failure to train.

### Parties, Jurisdiction, and Venue

1. Plaintiff Bianca Best is a resident of Michigan and, at the time of the events giving rise to this action, was a resident of Dorchester County, South Carolina.

2. Defendant Sam Richardson is the Sheriff of Dorchester County, South Carolina.

3. Defendant Richardson is sued in his individual capacity only.

4. Defendant Clayton Killion was, at all times relevant to this action, a deputy with the Dorchester County Sheriff's Office.

5.  Defendant Killion is sued in his individual capacity only.

6.  Defendant Marc Mood was, at all times relevant to this action, a deputy with the Dorchester County Sheriff's Office.

7.  Defendant Mood is sued in his individual capacity only.

8.  This Amended Complaint does not reassert claims against Dorchester County, the Dorchester County Sheriff's Office, or any Defendant in an official capacity, consistent with the Court's dismissal of those claims.

9.  This Amended Complaint does not reassert South Carolina Tort Claims Act negligence or gross-negligence claims against Defendants Killion, Mood, or Richardson in their individual capacities, consistent with the Court's dismissal of those claims.

10. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 42 U.S.C. § 1983 and the Constitution of the United States.

11. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

12. Venue is proper in this District because the acts and omissions giving rise to this action occurred in Dorchester County, South Carolina.

13. Venue is proper in the Charleston Division because Dorchester County lies within this Division and the operative events occurred there.

**<u>Introduction and Factual Background</u>**

14. This action arises from the alleged use of violent force and restraint by Deputies Clayton Killion and Marc Mood against Plaintiff Bianca Best inside her home in Summerville, South Carolina, on or about May 19, 2025.

15. At the time of the incident, Defendants Killion and Mood were deputies with the Dorchester County Sheriff's Office and were acting under color of law.

16. Defendant Richardson was the Sheriff of Dorchester County at the time of the incident.

17. Deputies Killion and Mood responded to Plaintiff's home after a call described in the original pleading as involving a domestic disturbance and Plaintiff's alleged suicidal statements following an argument with her husband, Tracey Best.

18. When Deputy Killion arrived, he spoke with Tracey Best, who reported that he had argued with Plaintiff and that Plaintiff had threatened to commit suicide.

19. Tracey Best informed Deputy Killion that officers had been dispatched to the residence the previous day for a similar reason.

20. Tracey Best further stated that Plaintiff was undressed and screaming at him.

21. Deputy Killion reported that Plaintiff stated, in substance, that she wanted to be left alone and was waiting for pills she had taken to take effect so that she could die.

22. Deputy Killion reported that Plaintiff stated several times that she wished to end her life after an argument with her husband.

23. Deputy Killion's original report denied observing any physical or non-physical injuries and denied that Plaintiff was under the influence of alcohol or drugs.

24. Plaintiff was naked and sitting in her bathtub when the deputies encountered her.

25. Plaintiff was in her own home, in a private bathroom, and was not suspected by the responding deputies of committing any crime.

26. The deputies entered the home after being invited inside by Plaintiff's husband.

27. Plaintiff expressed anger, distress, and disbelief that law-enforcement officers had entered her home and confronted her while she was unclothed in a private area of the residence.

28. Deputy Killion stated that he asked Plaintiff to put on clothing, and that Plaintiff exited her bedroom and approached him in the hallway while undressed.

29. Deputy Killion reported that Plaintiff stated, in substance, that the officers were going to arrest her in her own house.

30. Plaintiff is described in the original pleading as a petite female who immigrated to the United States from Zimbabwe.

31. Plaintiff alleges that she was lawfully and peacefully in her own bathtub when Deputy Killion confronted her in an aggressive manner.

32. Deputy Killion stated that he told Plaintiff she needed medical help because of her suicidal statements.

33. Deputy Killion further stated that Plaintiff refused medical assistance and attempted to walk away from him toward the bedroom.

34. Deputy Killion stated that he attempted to detain Plaintiff to prevent further harm to herself.

35. Deputy Killion further stated that Plaintiff resisted while in the bathtub and that there was a razor next to her on the tub.

36. The razor was alleged to be a disposable shaving stick that Plaintiff kept on the edge of the tub to shave her legs while bathing.

37. Plaintiff alleges that the razor posed no actual threat to Deputy Killion, Deputy Mood, or Plaintiff.

38. Plaintiff alleges that, despite Deputy Killion's later reliance on the razor, Deputy Killion did not immediately remove Plaintiff from the bathtub and did not immediately remove the razor from the area.

39. Plaintiff alleges that Deputy Killion allowed Plaintiff to remain in the bathtub near the razor until Deputy Mood arrived.

40. When Deputy Mood arrived, Deputies Killion and Mood decided to use force against Plaintiff.

41. Plaintiff alleges that Defendants Killion and Mood placed her in handcuffs and forcefully removed her from the bathroom and residence.

42. Plaintiff alleges that Defendants Killion and Mood dragged her from her home while she remained naked and handcuffed.

43. Plaintiff alleges that the deputies used such force in removing her from the bathroom and residence that she fell down the stairs while handcuffed.

44. Plaintiff alleges that she landed naked, handcuffed, and injured on the floor after falling down the stairs.

45. Plaintiff alleges that, after she fell, the deputies did not cover her with a sheet, blanket, or other covering to preserve her privacy and dignity.

46. Plaintiff alleges that the deputies then picked her up and dragged her naked and handcuffed through her front yard.

47. Plaintiff alleges that the deputies dragged her through the front yard in view of her neighbors.

48. Plaintiff alleges that the deputies then handed her over to emergency medical services.

49. Plaintiff alleges that, when the deputies elected to use physical force, they did not reasonably believe Plaintiff posed imminent harm to herself or anyone else.

50. Plaintiff alleges that Deputy Killion did not report any contemporaneous fear that Plaintiff would use the razor to harm herself or the deputies.

51. Plaintiff alleges that Deputy Killion's decision not to remove the razor or immediately separate Plaintiff from it reflected that the razor did not present an imminent threat.

52. Deputy Mood reported that he followed loud voices to the bathroom and observed Plaintiff sitting in the bathtub with no shirt on.

53. Deputy Mood reported that Deputy Killion told him Plaintiff had taken pills and had expressed suicidal ideations.

54. Plaintiff alleges, on information and belief, that Deputy Killion did not tell Deputy Mood about the razor before Deputy Mood independently observed it while the officers were waiting for emergency medical services to arrive.

55. Plaintiff alleges that both deputies knew they were dealing with a person experiencing a psychiatric or emotional emergency.

56. Plaintiff alleges that the deputies also knew the reported source of potential harm was pills that Plaintiff had allegedly already ingested.

57. Deputy Killion reported that he later photographed a half-empty bottle of pills that he believed were the same type Plaintiff had taken.

58. Plaintiff alleges that the pills were not within her reach and were not found until after she had been transported by emergency medical services.

59. Plaintiff alleges that the pill bottle could not have supplied a basis for any belief that immediate violent force was necessary to prevent Plaintiff from ingesting additional pills.

60. Plaintiff alleges that the deputies did not know what type of pills Plaintiff had allegedly taken.

61. Plaintiff alleges that the deputies observed no rapid or gradual deterioration in Plaintiff's faculties suggesting that any alleged pills were taking effect in a manner requiring violent restraint.

62. Plaintiff alleges that the deputies' reports described Plaintiff as awake and alert.

63. Plaintiff alleges that she made no threats of violence against the deputies or others.

64. Plaintiff alleges that she engaged in no violent or threatening behavior warranting the force used against her.

65. Plaintiff alleges that her lack of clothing made it apparent that she had no weapon or contraband concealed on her person.

66. Plaintiff alleges that the deputies made no meaningful effort to calm or deescalate the situation before placing hands on her and removing her by force.

67. Plaintiff alleges that the deputies treated her as though she were a violent criminal despite having no basis to suspect that she had committed, was committing, or was about to commit a crime.

68. Plaintiff alleges that a reasonable response would have included efforts to calm her, deescalate the encounter, cover her body, and assist her to medical care in a dignified manner.

69. Plaintiff alleges that Defendants Killion and Mood instead grabbed her, handcuffed her, and used force that caused her to fall down the stairs of her home.

70. Plaintiff alleges that the deputies' conduct caused her physical injuries.

71. Plaintiff alleges that the deputies' conduct caused her mental anguish, fear, anxiety, sleeplessness, nightmares, humiliation, and ongoing emotional distress.

72. Plaintiff alleges that the deputies had no warrant and were not present at the residence to serve a warrant.

73. Plaintiff alleges that the deputies had no reason to suspect the presence of violent or illegal activity inside the home.

74. Plaintiff alleges that the deputies had been granted access to the home by Plaintiff's husband, who informed them that the situation involved Plaintiff's psychological emergency.

75. Plaintiff alleges that the deputies were on notice that they were encountering a psychological emergency because they were told that officers had been called to the residence the previous day for a similar reason.

76. Plaintiff alleges, on information and belief, that deputies and supervisors associated with the Dorchester County Sheriff's Office had been called to the residence numerous times before for similar reports.

77. Plaintiff alleges, on information and belief, that prior calls to the residence did not reveal evidence that Plaintiff posed a physical threat to anyone.

78. Plaintiff alleges, on information and belief, that the deputies and their supervisors were familiar with Plaintiff, the residence, and the recurring nature of the calls for service.

79. Plaintiff alleges that, because of that prior history, the deputies and their supervisors had reason to understand that the circumstances required deescalation, restraint, and protection of Plaintiff's dignity rather than punitive or humiliating force.

80. Plaintiff alleges that the deputies' conduct was not a measured response to an immediate threat, but an excessive and humiliating use of force against an unclothed woman experiencing emotional distress in her own home.

81. Plaintiff alleges that Defendants Killion and Mood used force to punish, retaliate against, or humiliate her for objecting to their presence and conduct.

82. Plaintiff alleges that Defendant Richardson, as Sheriff of Dorchester County, was responsible for the hiring, training, supervision, discipline, and control of deputies serving under him, including Defendants Killion and Mood.

83. Plaintiff alleges that Defendant Richardson knew or should have known that deputies under his command would encounter persons experiencing mental-health crises, suicidal ideation, emotional distress, and other circumstances requiring deescalation and protection of personal dignity.

84. Plaintiff alleges that Defendant Richardson knew or should have known that deputies under his command needed adequate training and supervision concerning encounters with unclothed, vulnerable, medically distressed, or mentally distressed persons in private residences.

85. Plaintiff alleges that Defendant Richardson knew or should have known that deputies under his command needed adequate training and supervision concerning limits on force when no crime is suspected, no warrant is being executed, and no immediate threat exists.

86. Plaintiff alleges that Defendant Richardson failed to provide adequate hiring screening, training, supervision, discipline, or corrective oversight sufficient to prevent deputies under his command from using unjustified force in circumstances like those presented here.

87. Plaintiff alleges that Defendant Richardson failed to ensure that deputies under his command were trained and supervised to deescalate encounters involving psychiatric emergencies rather than escalating those encounters through force.

88. Plaintiff alleges that Defendant Richardson failed to ensure that deputies under his command were trained and supervised to preserve the privacy and dignity of unclothed persons encountered during welfare checks or mental-health responses.

89. Plaintiff alleges that Defendant Richardson failed to ensure that deputies under his command were trained and supervised to distinguish between an emergency medical response and a criminal enforcement response.

90. Plaintiff alleges that Defendant Richardson failed to ensure that deputies under his command were trained and supervised to avoid punitive, retaliatory, or humiliating treatment of citizens who object to police conduct during noncriminal welfare encounters.

91. Plaintiff alleges that the force used by Defendants Killion and Mood was a foreseeable result of inadequate hiring, training, supervision, discipline, and corrective oversight by Defendant Richardson.

92. Plaintiff alleges that, as a direct and proximate result of Defendants' conduct, she suffered bodily injury, emotional distress, humiliation, fear, anxiety, sleeplessness, nightmares, pain and suffering, and other damages.

93. The Court's March 9, 2026 Order dismissed Plaintiff's § 1983 claims against Dorchester County, the Dorchester County Sheriff's Office, and the official-capacity claims against Defendants Richardson, Killion, and Mood.

94. The Court's March 9, 2026 Order dismissed Plaintiff's negligence and gross-negligence claims under the South Carolina Tort Claims Act against Defendants Killion and Mood.

95. The Court's March 9, 2026 Order dismissed Plaintiff's prior § 1983 individual-capacity claim against Defendant Richardson as pleaded, but granted Plaintiff leave to move to amend regarding claims against Defendant Richardson for supervisory liability and failure to train.

96. Plaintiff brings this Amended Complaint to proceed on the surviving individual-capacity claims against Defendants Killion and Mood and to plead the amended individual-capacity claim against Defendant Richardson based on negligent hiring, training, supervision, and related failures.

### Count I – Assault and Battery

97. Plaintiff incorporates by reference the allegations set forth above as if fully restated herein.

98. This Count is asserted against Defendants Clayton Killion and Marc Mood in their individual capacities.

99. Plaintiff does not assert this Count against Defendant Richardson, Dorchester County, the Dorchester County Sheriff's Office, or any Defendant in an official capacity.

100. On or about May 19, 2025, Defendants Killion and Mood physically seized, restrained, handcuffed, and removed Plaintiff from her bathroom and residence while she was naked and experiencing an emotional or psychiatric crisis.

101. Plaintiff alleges that Defendants Killion and Mood used physical force against her body despite the absence of any reasonable suspicion that she had committed, was committing, or was about to commit a crime.

102. Plaintiff alleges that Defendants Killion and Mood used physical force against her despite the absence of any conduct by Plaintiff posing an imminent threat of physical harm to the deputies, to herself, or to any other person.

103. Plaintiff alleges that Defendants Killion and Mood placed her in handcuffs, dragged her from the bathroom, and used force that caused her to fall down the stairs while she was handcuffed and unclothed.

104. Plaintiff alleges that, after she fell, Defendants Killion and Mood picked her up and dragged her naked and handcuffed through her front yard in view of neighbors rather than covering her body or otherwise preserving her dignity.

105. The physical contact alleged above was intentional, harmful, offensive, unauthorized, and unjustified.

106. Defendants Killion and Mood's conduct placed Plaintiff in fear and apprehension of imminent harmful and offensive contact.

107. Defendants Killion and Mood's conduct constituted an assault upon Plaintiff.

108. Defendants Killion and Mood's intentional physical contact with Plaintiff constituted a battery upon Plaintiff.

109. Any force reasonably necessary to obtain medical assistance for Plaintiff could and should have been accomplished through deescalation, calm communication, covering Plaintiff's body, and assisting her to medical care in a dignified manner.

110. Defendants Killion and Mood instead used force that was excessive, punitive, humiliating, and unreasonable under the circumstances.

111. As a direct and proximate result of Defendants Killion and Mood's assault and battery, Plaintiff suffered physical injuries, pain and suffering, emotional distress, fear, anxiety, sleeplessness, nightmares, humiliation, loss of dignity, and other damages.

112. Plaintiff is entitled to recover compensatory damages from Defendants Killion and Mood in amounts to be determined by the jury.

113. Because Defendants Killion and Mood acted intentionally, willfully, wantonly, recklessly, maliciously, and with conscious disregard for Plaintiff's rights, safety, privacy, and dignity, Plaintiff is entitled to recover punitive damages against them in their individual capacities to the extent permitted by law.

### Count II – Intentional Infliction of Emotional Distress

114. Plaintiff incorporates by reference the allegations set forth above as if fully restated herein.

115. This Count is asserted against Defendants Clayton Killion and Marc Mood in their individual capacities.

116. Plaintiff does not assert this Count against Defendant Richardson, Dorchester County, the Dorchester County Sheriff's Office, or any Defendant in an official capacity.

117. On or about May 19, 2025, Defendants Killion and Mood encountered Plaintiff while she was naked in her own home and experiencing an emotional or psychiatric crisis.

118.    Plaintiff alleges that Defendants Killion and Mood knew she was not suspected of criminal activity and knew the encounter involved a request for assistance relating to her mental or emotional condition.

119.    Plaintiff alleges that Defendants Killion and Mood nevertheless escalated the encounter by using physical force against her, handcuffing her, dragging her from the bathroom, and removing her from the residence while she remained naked.

120.    Plaintiff alleges that Defendants Killion and Mood used force that caused her to fall down the stairs while she was handcuffed and unclothed.

121.    Plaintiff alleges that, after she fell, Defendants Killion and Mood failed to cover her body and instead dragged her naked and handcuffed through her front yard in view of neighbors.

122.    Plaintiff alleges that Defendants Killion and Mood acted despite having no reasonable basis to believe that Plaintiff posed an imminent threat of violence to them, to herself, or to any other person.

123.    Plaintiff alleges that Defendants Killion and Mood acted despite having no reasonable basis to believe that the force used was necessary to prevent the destruction of evidence or the commission of any crime.

124.    The conduct of Defendants Killion and Mood was extreme, outrageous, intolerable, and beyond all reasonable bounds of decency.

125.    Defendants Killion and Mood either intended to cause Plaintiff severe emotional distress or acted recklessly and with conscious disregard of the probability that their conduct would cause such distress.

126. Plaintiff alleges that Defendants Killion and Mood knew she was unclothed, vulnerable, distressed, and in need of assistance rather than punishment, humiliation, or coercive force.

127. Plaintiff alleges that Defendants Killion and Mood's decision to expose her naked body publicly while she was restrained and unable to protect her own dignity was humiliating, degrading, and unnecessary.

128. Plaintiff alleges that Defendants Killion and Mood's conduct caused her mental anguish, fear, anxiety, sleeplessness, nightmares, humiliation, and ongoing emotional distress.

129. Plaintiff's emotional distress was severe and of a kind that no reasonable person should be expected to endure.

130. As a direct and proximate result of Defendants Killion and Mood's intentional or reckless conduct, Plaintiff suffered emotional distress, humiliation, fear, anxiety, sleeplessness, nightmares, pain and suffering, loss of dignity, and other damages.

131. Plaintiff is entitled to recover compensatory damages from Defendants Killion and Mood in amounts to be determined by the jury.

132. Because Defendants Killion and Mood acted intentionally, willfully, wantonly, recklessly, maliciously, and with conscious disregard for Plaintiff's emotional well-being, safety, privacy, and dignity, Plaintiff is entitled to recover punitive damages against them in their individual capacities to the extent permitted by law.

### Count III – 42 U.S.C. § 1983 (Individual-Capacity Claims Against Deputies)

133. Plaintiff incorporates by reference the allegations set forth above as if fully restated herein.

134.     This Count is asserted against Defendants Clayton Killion and Marc Mood in their individual capacities only.

135.     Plaintiff does not assert this Count against Defendant Richardson, Dorchester County, the Dorchester County Sheriff's Office, or any Defendant in an official capacity.

136.     At all times relevant to this action, Defendants Killion and Mood were deputies with the Dorchester County Sheriff's Office and acted under color of state law.

137.     On or about May 19, 2025, Defendants Killion and Mood responded to Plaintiff's Summerville, South Carolina residence after a call involving a reported domestic disturbance and Plaintiff's alleged suicidal statements.

138.     Plaintiff alleges that Defendants Killion and Mood entered the residence after Plaintiff's husband invited law enforcement into the home.

139.     Plaintiff alleges that Defendants Killion and Mood encountered her while she was naked, in her own bathroom, and experiencing an emotional or psychiatric crisis.

140.     Plaintiff alleges that Defendants Killion and Mood had no warrant, were not attempting to execute a warrant, and had no reasonable suspicion or probable cause to believe Plaintiff had committed, was committing, or was about to commit any crime.

141.     Plaintiff alleges that Defendants Killion and Mood nevertheless seized Plaintiff by physically restraining her, placing her in handcuffs, removing her from her bathroom and residence, and delivering her to emergency medical services.

142.     Plaintiff alleges that Defendants Killion and Mood used force against her body by grabbing her, restraining her, handcuffing her, dragging her from the bathroom, and removing her from the home while she was naked.

143. Plaintiff alleges that the force used by Defendants Killion and Mood caused her to fall down the stairs while handcuffed and unclothed.

144. Plaintiff alleges that, after she fell, Defendants Killion and Mood picked her up and dragged her naked and handcuffed through her front yard in view of neighbors.

145. Plaintiff alleges that Defendants Killion and Mood failed to cover her body or take reasonable steps to preserve her privacy and dignity during the seizure and removal.

146. Plaintiff alleges that she made no threats of violence against Defendants Killion or Mood, against herself, or against any other person during the encounter.

147. Plaintiff alleges that she engaged in no violent or threatening conduct that would justify the degree of force used against her.

148. Plaintiff alleges that Defendants Killion and Mood knew the encounter involved an asserted need for medical or mental-health assistance rather than criminal enforcement.

149. Plaintiff alleges that any legitimate need to secure medical evaluation or transport could have been addressed through reasonable, nonviolent, and dignity-preserving measures.

150. Defendants Killion and Mood's seizure of Plaintiff was unreasonable under the Fourth Amendment.

151. Defendants Killion and Mood's use of force against Plaintiff was excessive and unreasonable under the Fourth Amendment.

152. Defendants Killion and Mood's conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States.

153.     Defendants Killion and Mood acted intentionally, knowingly, recklessly, and with deliberate indifference to Plaintiff's constitutional rights.

154.     Defendants Killion and Mood's conduct was not objectively reasonable in light of the facts and circumstances confronting them.

155.     Defendants Killion and Mood's conduct was not justified by any immediate threat to officer safety, public safety, preservation of evidence, or prevention of crime.

156.     As a direct and proximate result of Defendants Killion and Mood's unconstitutional seizure and excessive use of force, Plaintiff suffered bodily injury, pain and suffering, emotional distress, fear, anxiety, humiliation, sleeplessness, nightmares, loss of dignity, and other damages.

157.     Plaintiff is entitled to recover compensatory damages from Defendants Killion and Mood in amounts to be determined by the jury.

158.     Plaintiff is entitled to recover punitive damages against Defendants Killion and Mood in their individual capacities because their conduct was intentional, reckless, malicious, wanton, and in conscious disregard of Plaintiff's federally protected rights.

159.     Plaintiff is entitled to recover reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

## Count IV – Negligent Hiring, Training, and Supervision Against Sheriff Richardson

160.     Plaintiff incorporates by reference the allegations set forth above as if fully restated herein.

161.     This Count is asserted against Defendant Sam Richardson in his individual capacity only.

162.     Plaintiff does not assert this Count against Dorchester County, the Dorchester County Sheriff's Office, Defendants Killion or Mood, or any Defendant in an official capacity.

163.     Plaintiff does not reassert any South Carolina Tort Claims Act negligence or gross-negligence claim dismissed by the Court's March 9, 2026 Order.

164.     The Court's March 9, 2026 Order dismissed Plaintiff's prior § 1983 individual-capacity claim against Defendant Richardson as pleaded, but granted Plaintiff leave to amend regarding allegations involving supervisory liability and failure to train.

165.     At all times relevant to this action, Defendant Richardson was the Sheriff of Dorchester County.

166.     Plaintiff alleges that, as Sheriff, Defendant Richardson was responsible for the hiring, screening, training, supervision, discipline, retention, and control of deputies serving under his command, including Defendants Killion and Mood.

167.     Plaintiff alleges that Defendant Richardson knew or should have known that deputies under his command would respond to calls involving mental-health crises, suicidal ideation, emotional distress, welfare checks, domestic-disturbance reports, and requests for emergency medical assistance.

168.     Plaintiff alleges that Defendant Richardson knew or should have known that deputies under his command would encounter vulnerable persons in private residences, including persons who were unclothed, medically distressed, mentally distressed, or otherwise unable to protect their own privacy and dignity.

169.     Plaintiff alleges that Defendant Richardson owed Plaintiff and similarly situated members of the public a duty to exercise reasonable care in hiring, screening, training,

supervising, disciplining, and retaining deputies who would be entrusted with law-enforcement authority and the power to seize and use force against citizens.

170.     Plaintiff alleges that Defendant Richardson breached those duties by failing to implement, require, and enforce adequate training and supervision concerning deescalation during mental-health and welfare-check encounters.

171.     Plaintiff alleges that Defendant Richardson breached those duties by failing to implement, require, and enforce adequate training and supervision concerning the constitutional and common-law limits on force when deputies are not investigating a crime, are not executing a warrant, and are not facing an immediate threat.

172.     Plaintiff alleges that Defendant Richardson breached those duties by failing to implement, require, and enforce adequate training and supervision concerning the treatment of unclothed, vulnerable, or medically distressed persons encountered inside private residences.

173.     Plaintiff alleges that Defendant Richardson breached those duties by failing to implement, require, and enforce adequate training and supervision concerning the need to preserve privacy, bodily dignity, and physical safety during noncriminal welfare or medical-assistance encounters.

174.     Plaintiff alleges that Defendant Richardson breached those duties by failing to ensure that deputies under his command understood the distinction between an emergency medical response and a criminal enforcement response.

175.     Plaintiff alleges that Defendant Richardson breached those duties by failing to supervise and discipline deputies in a manner sufficient to prevent punitive, retaliatory,

humiliating, or unnecessary uses of force against citizens experiencing mental-health crises.

176.    Plaintiff alleges, on information and belief, that deputies and supervisors associated with the Dorchester County Sheriff's Office had been called to Plaintiff's residence numerous times before for similar reports.

177.    Plaintiff alleges, on information and belief, that prior calls to Plaintiff's residence placed Defendant Richardson and supervisory personnel on notice that deputies responding to that residence required appropriate guidance, supervision, and training concerning deescalation, mental-health response, and dignity-preserving conduct.

178.    Plaintiff alleges that Defendant Richardson's failures in hiring, training, supervision, discipline, and retention created or allowed an unreasonable risk that deputies would escalate noncriminal welfare encounters through unnecessary force.

179.    Plaintiff alleges that Defendants Killion and Mood's seizure, handcuffing, forceful removal, and public exposure of Plaintiff while she was naked and in distress were foreseeable results of Defendant Richardson's negligent hiring, training, supervision, discipline, and retention.

180.    Plaintiff alleges that Defendant Richardson's negligent acts and omissions were a direct and proximate cause of the injuries and damages Plaintiff suffered during and after the May 19, 2025 incident.

181.    As a direct and proximate result of Defendant Richardson's negligent hiring, training, supervision, discipline, and retention, Plaintiff suffered bodily injury, pain and suffering, emotional distress, fear, anxiety, sleeplessness, nightmares, humiliation, loss of dignity, and other damages.

182.    Plaintiff is entitled to recover compensatory damages from Defendant Richardson in his individual capacity in an amount to be determined by the jury.

160.    To the extent the evidence establishes that Defendant Richardson's conduct was reckless, willful, wanton, or in conscious disregard of Plaintiff's rights, safety, privacy, and dignity, Plaintiff seeks punitive damages against Defendant Richardson in his individual capacity to the extent permitted by law.

## Prayer for Relief

WHEREFORE, Plaintiff Bianca Best respectfully requests that judgment be entered in her favor and against Defendants, and that the Court award the following relief:

a.    Compensatory damages against Defendants Clayton Killion and Marc Mood, in their individual capacities, for Plaintiff's physical injuries, pain and suffering, emotional distress, humiliation, loss of dignity, and other damages;

b.    Compensatory damages against Defendant Sam Richardson, in his individual capacity, for damages proximately caused by his negligent hiring, training, supervision, discipline, and retention;

c.    Punitive damages against Defendants Killion, Mood, and Richardson, in their individual capacities, to the extent permitted by law;

d.    Reasonable attorney's fees and costs as permitted by 42 U.S.C. § 1988 and any other applicable law;

e.    Prejudgment and post-judgment interest to the extent permitted by law;

f.    Trial by jury on all issues so triable; and

g.    Such other and further relief as the Court deems just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,


By: s/Aaron Wallace_____
Aaron Wallace, Esq (100255)
Ryan McKaig, Esq (104026)
Wallace Law Firm
1416 Laurel Street, STE B
Columbia, SC 29201
PH: 803-766-3997
Fax: 839-218-5786
awallace@wallacefirmsc.com

Columbia, South Carolina
May 5, 2026